IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF NEW YORK

GIUSEPPE D'ALESSANDRO,

                            Petitioner,

    -vs-                                        No. 08-CV-914(RJA)(VEB)

                                                          DECISION AND ORDER

MICHAEL B. MUKASEY, United States
Attorney General; MICHAEL CHERTOFF,
Secretary of the Department of Homeland Security;
MARTIN HERRON, Assistant Field Office
Director for the Buffalo Federal Detention Facility
for United States Immigration and Customs
Enforcement; and all other persons exercising
direct legal control over the Petitioner,

                            Respondents.

**I.**      **Introduction**

      Represented by counsel, petitioner Giuseppe D'Alessandro (hereinafter, "D'Alessandro" or "petitioner"), an alien under a final order of removal, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging is continued detention in respondents' custody (hereinafter, "respondents", "DHS/ICE", or "the Government"). This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1). Following an expedited hearing and oral argument held on March 20, 2009, regarding the merits of D'Alessandro's petition and on the suitability of bail pending determination of the petition, I issued a Report and Recommendation recommending that the petition granted and that an unconditional writ of habeas corpus issue forthwith directing D'Alessandro's release from custody subject to appropriate conditions of supervision by DHS/ICE. This Decision and Order pertains to petitioner's bail application.

      Pursuant to *Mapp v. Reno*, 241 F.3d 221, 223-30 (2d Cir. 2001), the federal courts have

inherent authority to admit habeas petitioners to bail in the immigration context where the petitioner demonstrates that the habeas petition raises substantial claims and that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective. 241 F.3d at 223, 226, 229. For the reasons that follow, I believe that this is one of those truly "unusual cases" where "extraordinary [and] exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective," *id.*, I grant petitioner's application for bail pending final adjudication of his habeas petition.

## II.  Discussion

As an initial matter, I wish to address respondents' apparent argument that because petitioner is under a final order of removal and is being detained under 8 U.S.C. § 1231, rather than under 8 U.S.C. § 1226,[1] this Court has no authority to entertain a bail application. In *Mapp*, the INS initially argued that § 1226 applied to petitioner, even though he was subject to a final order of removal; while the case was pending, the INS "reinterpreted the scope of Section 1226(c) and concluded that its applicability is limited to the pendency of administrative proceedings." 241 F.3d at 228. In other words, the INS conceded that, because Mapp's administrative proceedings are final, the conditions of his detention are governed by 8 U.S.C. § 1231 and "[he] [wa]s no longer subject to 'mandatory detention.'" *Id.*  "Put more broadly," the INS ultimately abandoned its "contention that any particular statute precludes the federal courts'

---

[1]  Title 8 U.S.C. § 1226(c) provides, in pertinent part:

The Attorney General shall take into custody any alien who ... is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title.... The Attorney General may release [such] an alien ... only if the Attorney General decides ... that release of the alien from custody is necessary to [the Witness Protection Program] and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(1), (2)

exercise of their inherent authority to release on bail habeas petitioners situated like Mapp," who, like D'Alessandro, are detained under 8 U.S.C. § 1231. *Id.* at 228-29. The Second Circuit squarely held in *Mapp v. Reno* that the "the district court acted within its power when it considered whether petitioner," an alien whose conditions of detention were subject to 8 U.S.C. § 1231, "was entitled to release on bail." *Id.* at 229.

It is settled law in the Second Circuit that the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction. *Ostrer v. United States*, 584 F.2d 594, 596 n. 1 (2d Cir.1978). In *Ostrer*, the Second Circuit stated that "[a] district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody." *Accord Mapp*, 241 F.3d at 223 (citing *Argro v. United States*, 505 F.2d 1374, 1377-78 (2d Cir.1974); *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir.1969) (*per curiam*) (finding that "[r]elease is available in a habeas corpus action"); *Boyer v. City of Orlando*, 402 F.2d 966, 968 (5th Cir.1968) (ordering the release of a habeas petitioner on bail pending exhaustion of state and federal remedies); *Johnston v. Marsh*, 227 F.2d 528, 531 (3rd Cir.1955) ("One of the inherent powers of the judiciary with regard to proceedings before it has been the admission of a prisoner to bail where, in the exercise of his discretion, the judge deems it advisable."). The Second Circuit noted in *Mapp* that its decisions, and those of the district courts in this Circuit, reflected this viewpoint "many times in more recent years." *Mapp*, 241 F.3d at 226 (citing *Grune v. Coughlin*, 913 F.2d 41, 43-44 (2d Cir.1990); *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir.1981); *Starzecpyzel v. Reno*, No. 97 Civ. 1349, 1997 WL 289568, at *1 (S.D.N.Y.1997); *Harris v. United States*, No. 97 Civ.1904, 1997 WL 272398, at *1 (S.D.N.Y. May 21,1997)). In *Mapp*, the Second Circuit "reaffirm[ed] th[o]se cases and h[e]ld, once again,

that the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction." *Id. Mapp*'s validity has not been questioned, and it continues as the leading precedent on this issue in the Second Circuit.

The Second Circuit was careful to point out in *Mapp* that it had "consistently, emphasized that this power is a limited one, to be exercised in special cases only." 241 F.3d at 226. As the Circuit explained *Ostrer*, "a habeas petitioner should be granted bail only in unusual cases, or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Ostrer,* 584 F.2d at 596 n. 1 (internal quotation marks and citation omitted); *accord Mapp*, 241 F.3d at 226; *see also Grune*, 913 F.2d at 44 (noting that "[t]he standard for bail pending habeas litigation is a difficult one to meet: The petitioner must demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective") (internal quotation marks omitted) (alterations in original). In *Mapp*, the Government "urge[d] that in cases challenging INS detention (rather than incarceration as a result of a criminal conviction), the power of the federal courts [to grant bail to habeas petitioners] is even more limited" than in cases involving "extraordinary or exceptional circumstances." 241 F.3d at 227. According to the Government's view in *Mapp*, "Congress's 'plenary power' over immigration matters cannot coexist with the federal courts' exercise of such 'inherent authority' to release habeas petitioners." *Id.* The Second Circuit squarely rejected this argument, noting that "[a]bsent a clear direction from Congress, federal judicial power is unaltered, and the authority of the federal courts to admit to bail parties properly within their

jurisdiction remains unqualified." *Id.* at 227; *see also id.* at 229.[2] Thus, the Second Circuit concluded in *Mapp*, "the district court acted within its power when it considered whether petitioner was entitled to release on bail." *Id.* at 229.

I turn now to the issue of "petitioner's fitness for bail" which requires me to "inquire into whether 'the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'" *Mapp*, 241 F.3d at 229 (quoting *Iuteri*, 662 F.2d at 161; citing *Grune*, 913 F.2d at 44). In *Mapp*, the district court had found petitioner had "'a substantial claim for relief'" on the merits of his petition, which the Second Circuit assumed was correct given the case law upon which the district court relied. *Id.* When other district courts in this Circuit have applied the standards set forth in the foregoing Second Circuit decisions, "[a]n essential factor . . . [has been] the necessity that the petition present merits that are more than slightly in petitioner's favor." *Richard v. Abrams*, 732 F. Supp. 24, 25 (S.D.N.Y.1990) (citing *Rado v. Manson*, 435 F. Supp. 349, 350-51 (D. Conn.1977) (holding that petitioner must be (1) "an exceptionally strong candidate for bail" and make (2) claims of a "substantial nature upon which [he] has a high probability of success"); *Rado v. Meachum*, 699 F. Supp. 25, 26-27 (D. Conn.1988) (holding that the relevant factors are whether (1) "substantial claims" are set forth in the petition; (2) there is a "demonstrated likelihood the petition will prevail"; and (3) there are "extraordinary

---

[2] The Second Circuit noted in *Mapp* that "[t]he government attempt[ed] to buttress this claim by highlighting the myriad ways in which Congress has, in recent years, contracted the scope of judicial review with respect to immigration custody matters," *id.* at 229 (citing 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii), 1252(g) (1998)). The Second Circuit aptly described "[t]hese statutes erect a cavalcade of jurisdictional bars to federal court review of INS detention decisions." I note that the Supreme Court, later the same year that *Mapp* was decided, laid to rest in *Zadvydas* the argument made by the Government in *Mapp* that these statutes "provide further evidence of a critical distinction between habeas proceedings arising out of criminal as opposed to civil contexts–a distinction that, it suggests, manifests itself, *inter alia*, in the absence of authority in the district courts to grant bail to petitioners in the latter set of cases on the same terms as in the former," 241 F.3d at 229; *see Zadvydas*, 533 U.S. at 699-701.

"circumstances" attending the petitioner's situation which would "require" the grant in order to make the writ of habeas corpus "effective," presumably if granted) (citing *Stepney v. Lopes*, 597 F. Supp. 11, 14 (D. Conn.1984)); *accord Harris v. United States*, 1997 WL 272398, at *1.

Here, I have already reviewed the merits of D'Alessandro's habeas claims, and a have recommending granting the writ of habeas corpus unconditionally, as stated in my Report and Recommendation. D'Alessandro has demonstrated to me that he should prevail, based upon my reading of the record and the relevant case law. Clearly, in my opinion, D'Alessandro has exceeded his burden of showing that he has claims of a substantial nature upon which he has a high probability of success. And, as explained in my Report and Recommendation, I believe that the petition presents merits that are overwhelmingly in petitioner's favor such that he has a high probability of success when subsequent courts consider these claims. Notably, the Second Circuit does not require that the petitioner convince every court, let alone the court considering the bail application, that he *will* succeed; rather, he need only show that his claims are "substantial." *See Mapp*, 241 F.3d at 229.

Furthermore, I find that this case presents "extraordinary circumstances." In *Mapp*, the district court had found "Mapp had a substantial likelihood of success on the merits of his habeas petition, and that his situation was 'extraordinary when compared to typical habeas proceedings.'" 241 F.3d at 229. The Second Circuit assumed "*arguendo*, that the circumstances of Mapp's habeas petition were, in some respect, 'extraordinary.'" 241 F.3d at 229. The Second Circuit's sole reason for vacating the grant of bail was "because the district court neglected to articulate why its grant of bail was 'necessary to make the habeas remedy effective' in this case." *Id.* (quoting *Ostrer*, 584 F.2d at 596 n. 1). In addition to the fact that I believe D'Alessandro's

habeas claims are clearly meritorious, there are additional circumstances that qualify this case as extraordinary and exceptional. As discussed in my Report and Recommendation, DHS/ICE's custody reviews have been grossly defective, and he has been confined to civil detention for sixteen months, well beyond the presumptively reasonable six-month period set forth in *Zadvydas*. There is no evidence in the record whatsoever to support a finding that D'Alessandro is a flight risk or is a danger to the community. D'Alessandro is a fifty-year-old man with strong family ties–his wife and son legally reside in Queens, New York, and welcome him back into their lives. D'Alessandro's wife is willing to use their family home as collateral for a bond and she and her son plan to help him find gainful employment to the extent he is able to work. D'Alessandro also has a number of serious, potentially debilitating health problems, as demonstrated by the testimony offered by respondents' medical witness, Dr. Brenda Bailey. In particular, D'Alessandro Dr. Bailey testified that petitioner is a "chronic care" patient who "absolutely" requires medical follow-up for these issues on a monthly basis.

     According to Dr. Bailey and the medical records, D'Alessandro has an enlarged prostate gland which is causing urinary outlet obstruction (i.e., pain and difficulty in urinating and inability to empty his bladder completely). Dr. Bailey has sent D'Alessandro for further testing to determine if the prostate hypertrophy is benign or cancerous. Follow-up regarding the prostate issue is required in either scenario. D'Alessandro suffers from renal (kidney) cysts which must be followed to make sure that they do not rupture or bleed. He has "significant" varicose veins, a consequence of which is that he risks suffering a deep vein thrombosis. Because of his venous impairments, the blood vessels are not returning blood to the heart well; that is, there is reduced oxygenation of the tissues. This causes pooling of blood in his legs, visible as a dark rash (stasis

dermatitis). The varicose veins also cause pain and swelling in his legs, for which Dr. Bailey has recommended compression hose. D'Alessandro also is experiencing near-vision problems (foggy vision), for which he has been referred to an eye doctor to determine whether they are related to his vascular issues or simply to age-related changes. D'Alessandro has experienced a fairly dramatic and unintended weight loss of sixteen pounds (180 pounds in November 2007, to 164 pounds in January 2009) during his incarceration at the DHS facility.

     Dr. Bradley testified that the Batavia Federal Detention Facility's ("the Batavia FDF") medical unit is "fully operational, 24/7" and has a staff of two physician assistants, two nurse practitioners, and a pharmacy. The only physician is Dr. Bradley. She is responsible for 666 beds at the Batavia FDF (two-thirds are reserved for DHS, and one-third for the United States Marshal's Service), which has an average daily population of about 580 inmates. Dr. Bradley also is responsible for "other" medical facilities operated by DHS. She testified that the average length of stay at the Batavia FDF is "about 49 days" and confirmed that the average length of stay is less than six months. Dr. Bradley indicated that she first personally examined D'Alessandro, and reviewed his medical records, on March 11, 2009, sixteen months after he was first admitted to the facility in November 2007. This is not intended as a criticism of Dr. Bailey or DHS/ICE; it simply appears to be matter of an over-stretching of too few resources.

     Here, D'Alessandro has a strong family support network which will provide him with emotional support and physical care. Mrs. D'Alessandro's wife has already arranged for him to see their family physicians in Queens. Releasing him to his family's care makes eminent sense from a purely fiscal cost-benefit point of view, as well as from a medical and humane perspective. Where there is a viable release plan and the guarantee of housing and medical care

at no expense of resources by DHS/ICE, it is simply irrational to confine a chronic care, non-dangerous, non-flight-risk patient such as D'Alessandro to a temporary detention facility where the average stay is less than two months, where there is only *one* physician to cover 666 beds, and where the same physician is responsible for supervising medical care at additional Government facilities. D'Alessandro's chronic and debilitating health conditions, while not "emergent," according to Dr. Bailey, certainly constitute exceptional circumstances setting his case apart and making bail necessary to make the habeas remedy effective, and to prevent further deterioration of his health.

Furthermore, this is an exceptional case in that there is no evidence to support a finding that D'Alessandro is a flight risk or is a danger to the community. As discussed in my Report and Recommendation, the District Attorney's Office's representative, A.D.A. Irwin;  A.D.A. Morris, the former prosecutor, supported D'Alessandro on his first bid for parole. A.D.A. Irwin wrote,

> I reviewed D'Alessandro's disciplinary record, which appears to be *exemplary*, and was informed by [defense counsel] that D'Alessandro long ago accepted responsibility for his crime. After speaking with Ms. Morris [the prosecutor at trial] and reviewing the underlying facts of D'Alessandro's crime, it is the Office's position that the 15 years he has already served adequately addresses the nature and consequences of the crime he committed and that justice does not require any additional incarceration. Ms. Morris concurs with this assessment.

Docket No. 7-9. In deciding to grant D'Alessandro early release to parole supervision, the New York State Division of Parole has implicitly concluded that D'Alessandro is presently a non-violent person, not likely to become violent, and not a flight risk. Respondents do not argue, and in fact conceded at oral argument, that D'Alessandro's disciplinary record while in immigration custody is unblemished. Notably, respondents did not contend at oral argument that D'Alessandro himself was a dangerous or violent or a flight risk. Rather,  Indeed, respondents'

attorney stated that she did not disagree with this Court's assessment of petitioner as a "poster child" for release.

I further find the grant of bail is "necessary to make the habeas remedy effective" in this case because the relief sought by D'Alessandro in his habeas petition *is* release from detention in DHS/ICE custody. *Cf. Mapp v. Reno*, 241 F.3d at 231) ('The relief sought by petitioner guaranteed neither his release from detention nor a vacatur of the INS's order of removal. The most Mapp could (and, as it turns out, did) secure by virtue of being granted habeas was an order from the district court requiring that the INS consider his eligibility for a waiver of deportation under INA § 212(c). But, and significantly, the effectiveness of this form of relief is wholly independent of the question of whether Mapp is incarcerated while the § 212(c) hearing is pending. Without findings that indicate why Mapp's release is needed to make the required § 212(c) hearing 'effective," findings that are by no means obvious, we cannot say that a case for bail has been made out."). If adopted by the District Judge, my Report and Recommendation regarding his habeas petition entitles D'Alessandro to "outright release," 241 F.3d at 231. Logically, D'Alessandro has "demonstrat[ed] that release is necessary to the effectiveness of . . . the habeas relief petitioner sought," *id.* at 232. Therefore, I grant D'Alessandro's application to be released on bail pending a final determination of his federal habeas corpus petition. *Accord*, *e.g.*, *Nadarajah v. Gonzales*, 443 F.3d 1069, 1084 (9th Cir. 2006) ("As indicated by the analysis of Nadarajah's habeas corpus claims, we conclude that he has shown a probability of success on the merits. The balance of hardships also favor releasing Nadarajah. There is undisputed evidence in the record that his health is deteriorating, a deterioration that is only exacerbated by continuing detention. Therefore, we grant the motion for release, subject to conditions to be set

by ICE.")

D'Alessandro shall be required to post a bond in a reasonable amount and shall be subject to the conditions of supervision as imposed by DHS/ICE. I note that 8 C.F.R. § 241.5 delineates the conditions of release after expiration of the removal period:

> (a) Order of supervision. An alien released pursuant to § 241.4 shall be released pursuant to an order of supervision. The Commissioner, Deputy Commissioner, Executive Associate Commissioner Field Operations, regional director, district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer-in-charge may issue Form I-220B, Order of Supervision. The order shall specify conditions of supervision including, but not limited to, the following:
> 
> (1) A requirement that the alien report to a specified officer periodically and provide relevant information under oath as directed;
> (2) A requirement that the alien continue efforts to obtain a travel document and assist the Service in obtaining a travel document;
> (3) A requirement that the alien report as directed for a mental or physical examination or examinations as directed by the Service;
> (4) A requirement that the alien obtain advance approval of travel beyond previously specified times and distances; and
> (5) A requirement that the alien provide the Service with written notice of any change of address on Form AR-11 within ten days of the change.
> 
> (b) Posting of bond. An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient to ensure compliance with the conditions of the order, including surrender for removal.
> 
> (c) Employment authorization. An officer authorized to issue an order of supervision may, in his or her discretion, grant employment authorization to an alien released under an order of supervision if the officer specifically finds that:
> (1) The alien cannot be removed in a timely manner; or
> (2) The removal of the alien is impracticable or contrary to public interest.

8 C.F.R. § 241.(5). As this Court has discussed above, and in its Report and Recommendation recommending the grant of habeas relief, respondents cannot seriously argue that petitioner, given his strong and enduring family ties and community support; his spotless institutional

records; and his serious and chronic health problems, would not comply with any of the foregoing conditions of release set by DHS/ICE. The Court has no doubt that D'Alessandro will cooperate to the fullest with DHS/ICE in executing a plan of supervised release that will address any of DHS/ICE's concerns. The Court further notes that DHS/ICE will be able to coordinate with the New York State Division of Parole, as D'Alessandro is essentially on lifetime parole supervision in the State system.

DHS/ICE is directed to commence plans to release D'Alessandro immediately upon filing of this Decision Order. In light of the length of his detention to date, D'Alessandro's release to supervision shall be accomplished as expeditiously as possible, and no later than the close of business (5 p.m.) on Monday, March 30, 2009.

**ALL OF THE ABOVE IS SO ORDERED.**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   March 25, 2009
         Buffalo, New York.